United States District Court
Southern District of Texas
**ENTERED**
December 05, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANITA PRADO BUSTOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:23-CV-00003 |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Plaintiff Anita Prado Bustos filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the decision of the Commissioner of Social Security ("the Commissioner") to deny her application for disability insurance benefits and supplemental security income. Now pending are Bustos's and the Commissioner's cross-motions for summary judgment and briefing. (D.E. 12, 15, 16). Bustos contends that: (1) the administrative law judge ("ALJ") improperly concluded that her abdominal pain was non-severe; (2) the ALJ failed to properly consider her subjective complaints regarding standing/walking limitations; and (3) the ALJ's residual functional capacity ("RFC") determination was not supported by substantial evidence due to its failure to include limitations for her abdominal pain, ability to sit, walk, or stand, and mental limitations. For the reasons discussed further below, it is respectfully recommended that Bustos's motion (D.E. 12) be **GRANTED IN PART**, the Commissioner's motion (D.E. 15) be **DENIED**

**IN PART**, and the Commissioner's denial of supplemental security income be **REVERSED AND REMANDED** for further consideration.

## I.    JURISDICTION

This Court has jurisdiction under 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security and venue is appropriate because Bustos resides in Nueces County, Texas.  42 U.S.C. § 405(g); 28 U.S.C. § 124(b)(6).

## II.    BACKGROUND & ADMINISTRATIVE RECORD

### a.  Application and Hearing

In November 2020, Bustos filed an application for disability insurance benefits and supplemental security income, alleging a disability commencing on September 7, 2020. (*See* D.E. 5-1 at 363-64, 367-72).  Bustos claimed that her hypertension, diabetes, neuropathy, two hernia repairs, three c-sections, abscesses, depression, double bypass, and high cholesterol limited her ability to work.  (*Id.* at 408).  The Commissioner denied Bustos's application both initially and on reconsideration.  (*Id.* at 204, 230).

In the Disability Determination Explanation at the initial stage, state medical consultants Dr. Henry Hanna and Dr. Jeanine Kwun concluded that Bustos's diabetes mellitus and anxiety disorders were medically determinable impairments, but both were non-severe.  (*Id.* at 187).  Dr. Hanna further concluded that Bustos's anxiety caused no limitations in any of the Paragraph B criteria.  (*Id.* at 188).  Dr. Hanna and Dr. Kwun noted that Bustos had conditions that were somewhat severe, but were not expected to last 12 months.  (*Id.* at 187, 190).

In the Disability Determination Explanation at the reconsideration stage, state medical consultants Dr. Laurence Ligon and Dr. Stacey Fiore concluded that Bustos's diabetes mellitus and anxiety disorders were medically determinable impairments, but both were non-severe. (*Id.* at 211). When evaluating the Paragraph B criteria, Dr. Fiore concluded that Bustos's anxiety mildly limited her abilities to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself. (*Id.* at 212).

The ALJ held a hearing on June 30, 2022. (*Id.* at 142). Bustos testified that she could not work due to her diabetes, hypertension, nausea, and vomiting. (*Id.* at 148). Her doctors believed that one of her diabetes medications was making her vomit. (*Id.*). Her diabetic neuropathy had been ongoing for a while, but her feet began swelling two months earlier. (*Id.* at 149). She used a cane at home when she had to be on her feet for an extended period. She kept her feet elevated when she was sitting or laying in bed. (*Id.*). She also experienced pain and tingling in her hands and could not lift much. (*Id.* at 150). Her hernia was also much improved, but still caused issues with lifting. (*Id.*). She was vomiting two to three times a day after eating. (*Id.* at 151). On an average day, she stayed at home because she was always sick and vomiting. (*Id.*). She had pain in her stomach and feet, especially in her stomach after eating. (*Id.* at 152). On a normal day, her stomach pain was a 6 or 7 out of 10. (*Id.* at 153). The pain made it difficult to do daily activities. (*Id.*). Due to her prior receipt of unemployment benefits, Bustos agreed to amend her alleged onset date to June 30, 2021. (*Id.* at 163).

A vocational expert testified that Bustos's past relevant work included being a cook, which was a highly skilled job with management responsibilities, along with fast food worker, fast food manager, and hand packer.  (*Id.* at 173).  The ALJ asked whether a hypothetical person with the same age, education, and work experience would be able to perform her past work if they were limited to light work and had the additional limitations of: (1) only occasional climbing ramps and stairs; (2) never climbing ladders, ropes, or scaffolds; and (3) only occasional stooping, kneeling, crouching, and crawling.  (*Id.* at 174).  The vocational expert responded that such a person could be a fast food worker or fast food manager.  If the person had the additional limitation of only occasional fingering and feeling, they also would not be able to complete the job of fast food worker.  (*Id.*).  No jobs would exist if the person was also required to take 30 minutes to an hour of additional breaks each workday or if they missed two workdays per month.  (*Id.* at 178).

### b.  Medical Records

On September 9, 2019, Bustos visited the emergency room, reporting nausea and vomiting.  (*Id.* at 531).  She had vomited 1-3 times that day and it was exacerbated by eating.  She denied pain.  She had not taken her insulin or oral diabetic medication in some time and her blood sugar was high.  (*Id.*).  She reported cannabis use.  (*Id.* at 533).  Bustos's symptoms resolved while she was in the ER, and the primary impression was hyperglycemia.  (*Id.* at 536, 538).

On May 6, 2020, Bustos visited nurse practitioner Emily Miller, reporting vomiting and an upset stomach for two mornings.  (*Id.* at 503).  She also had pain that she described

as like knots in her stomach.  (*Id.* at 506).  She drank water to try to go to sleep, but it did not help, and when she woke up in the morning, she was nauseous and vomited the water. Bustos also reported significant stress due to her family life.  She denied constipation or diarrhea.  Bustos was prescribed nausea medication.  (*Id.*).

On July 9, 2020, Bustos visited the emergency room, reporting epigastric abdominal pain, nausea, and vomiting that had worsened over the previous month.  (*Id.* at 514).  She was diagnosed with gastritis, with secondary impressions of cholelithiasis, hernia, and marijuana use.  (*Id.* at 517).  The epigastric pain was in the right upper quadrant and a CT scan showed gallstones and a large ventral hernia.  (*Id.* at 519).  The hernia was reducible. (*Id.*).  An ultrasound showed cholelithiasis, but no cholecystitis.  (*Id.* at 522).  Bustos was assigned additional nausea medication and referred to outpatient surgery.  (*Id.*).  A further ultrasound on July 29, 2020, showed gallstones, but an otherwise unremarkable right upper abdominal quadrant.  (*Id.* at 554).

On August 4, 2020, Bustos visited Dr. Allison Schebler-Poulos regarding her abdominal pain.  (*Id.* at 576).  Bustos walked without restrictions.  (*Id.* at 578).  She denied the use of illicit drugs.  (*Id.*).  Bustos reported that she was vomiting in the morning and had diarrhea.  (*Id.* at 579).  Her abdominal pain was on the right side and was sometimes an 8 or 9 out of 10.  The only thing she could eat without pain and vomiting was eggs.  Her blood sugar level was always high.  She also reported numbness and pain in her legs and feet.  She did not report depression or anxiety.  (*Id.*).  Dr. Schebler-Poulos diagnosed Bustos with cholelithiasis without obstruction and referred her to a surgeon.  (*Id.* at 580).  She also

recommended a low fat diet and refilled Bustos's medication.  She also recommended re-checking for gastritis.  Dr. Schebler-Poulos also referred Bustos to surgery for her hernia.  (*Id.*).  Bustos returned to Dr. Schebler-Poulos on August 19, 2020, for her abdominal pain.  (*Id.* at 571).  She had pain and nausea, but no vomiting.  (*Id.* at 574).  The medication helped.  (*Id.*).  Dr. Schebler-Poulos repeated her lab work and refilled her medication.  (*Id.* at 575).  Bustos also reported abdominal pain and nausea, but no vomiting, at a September 2, 2020, visit.  (*Id.* at 847).

On August 31, 2020, Bustos visited Dr. Christopher Petrikas to consult about surgery.  (*Id.* at 709).  Bustos reported that her pain was a 6 out of 10 as a result of her gallstones and hernia, she vomited 2-3 times every day, and she had constant nausea.  (*Id.*).  She reported that she smoked marijuana.  (*Id.* at 710).  On September 8, 2020, Dr. Matthew Ficenec performed surgery, conducting a laparoscopic cholecystectomy and a repair of a recurrent ventral hernia.  (*Id.* at 732).  He reported that Bustos tolerated the procedure well.  (*Id.* at 733).

On September 16, 2020, Bustos visited Dr. Schebler-Poulos and reported that her pain was doing better after surgery.  (*Id.* at 564).

On September 26, 2020, Bustos had a CT scan of her abdomen and pelvis due to extreme abdominal pain after surgery.  (*Id.* at 584).  The scan showed a large soft tissue abscess in her anterior abdominal wall.  (*Id.* at 585).  She was admitted to the hospital on the same day due to the infection.  (*Id.* at 622).  She reported ongoing nausea and vomiting

after her surgery.  (*Id.* at 638).  On September 27, 2020, Dr. Ficenec placed a drain in the abscess.  (*Id.* at 665).  She was discharged on October 1, 2020.  (*Id.* at 622).

On November 17, 2020, Bustos visited Dr. Schebler-Poulos and reported stomach aches that required using the bathroom.  (*Id.* at 832).  Her blood sugar was also high.  (*Id.* at 836).  Every couple of days, Bustos awoke feeling very hungry, but she vomited after eating.  She reported abdominal pain, nausea, diarrhea, and vomiting.  (*Id.*).  Dr. Schebler-Poulos diagnosed her with gastroesophageal reflux disease ("GERD") and prescribed medication.  (*Id.* at 837).

Bustos reported the following in a December 2, 2020, function report.  (*Id.* at 430-37).  She had no problem with personal care.  (*Id.* at 431).  She prepared her own meals daily.  (*Id.* at 432).  She did cleaning, laundry, and other household chores.  (*Id.*).  She could not push heavy things, however.  (*Id.* at 433).  She went outside when she had to and could drive a car and go out alone.  She shopped for groceries.  She was able to handle money.  (*Id.*).  She enjoyed watching TV and playing bingo.  She spent time with others in person at church, stores, and social groups.  (*Id.*).  Due to her illnesses, injuries, and conditions, she had difficulty lifting, squatting, standing, reaching, and climbing stairs.  (*Id.* at 435).  She got along well with authority figures, but did not handle stress well.  (*Id.* at 436).

On January 26, 2021, Bustos visited the emergency room for abdominal pain.  (*Id.* at 1176).  She reported that, for the previous two weeks, she had intermittent mid-abdomen and epigastric pain with vomiting and diarrhea.  She also reported marijuana use.  (*Id.*).

7

She appeared uncomfortable and tearful. (*Id.* at 1178). She had a normal gait. (*Id.*). A CT scan of her abdomen showed epiploic appendagitis, and Dr. Ficenec recommended treating her for that. (*Id.* at 1179). She was given medication for pain and nausea. (*Id.*).

On March 13, 2021, Bustos again visited the emergency room for abdominal pain and vomiting. (*Id.* at 1128). She reported that the pain and vomiting had been ongoing for several weeks, but seemed to come and go randomly. Bustos stated that she smoked marijuana daily. She had been eating less because she felt like her nausea and vomiting became worse if she ate. She could drink without having problems. (*Id.*). Bustos was given medication for presumed cannabinoid hyperemesis syndrome. (*Id.* at 1131). On reevaluation, Bustos reported she was feeling better and that her abdominal pain was almost completely resolved. Dr. Andrew Dahlke advised her to abstain from using cannabis because he believed it was the cause of her abdominal pain and nausea. Bustos was agreeable to this. (*Id.*).

On March 24, 2021, Bustos returned to Dr. Schebler-Poulos and reported that she had been constipated and that her stomach pain was getting worse. (*Id.* at 910). She had a constant burning pain for three weeks. (*Id.* at 916). She stayed in bed because moving around made it worse. She was ambulating normally. (*Id.*). Dr. Schebler-Poulos prescribed medication for her constipation, refilled her other medication for abdominal pain, and conducted additional lab work. (*Id.*).

On March 29, 2021, Bustos visited Dr. Ficenec regarding her abdominal pain. (*Id.* at 1083). She reported that it was worse in the morning before she ate, and sometimes

reached an 8 out of 10.  She also had nausea.  (*Id.*).  Dr. Ficenec scheduled her for an upper endoscopy the next day.  (*Id.* at 1085).  The endoscopy results were mostly normal, but did show a small sliding hiatal hernia and gastritis without ulceration.  (*Id.* at 1117).

Bustos reported the following in an April 6, 2021, function report.  (*Id.* at 457-64). She had pain when reaching or bending over due to hernias.  (*Id.* at 457).  She had difficulty eating due to hernias and vomiting.  Due to heart conditions, she suffered from shortness of breath and fatigue, and she was unable to be under stress.  It was difficult to stand or walk for long periods of time due to pain and swelling in her feet.  She was constantly nauseous.  (*Id.*).  She had difficulty sleeping because she vomited at night, had to urinate frequently due to her diabetes, and had nerve pain.  (*Id.* at 458).  She had difficulty dressing, bathing, caring for her hair, and feeding herself due to pain.  (*Id.*).  She prepared her own meals daily, but only simple meals like sandwiches.  (*Id.* at 459).  She could not prepare larger meals anymore because of pain and swelling in her feet and her constant nausea. She did some chores like light sweeping, dusting, and making the bed, but her husband did all other chores.  (*Id.*).  She went outside to sit on the porch 3 to 4 times per week.  (*Id.* at 460).  She could drive a car and go out alone.  She went shopping in stores for groceries, household items, and clothes, but only once a month or less.  She did not have difficulty with money, although she had never written a personal check.  (*Id.*).  Her hobbies used to include road trips, walking, and riding her bike, but she could no longer do these activities. (*Id.* at 461).  She spent time with others in person, on the phone, over text, and on video chat.  She played bingo with family weekly and went to church weekly.  (*Id.*).  Due to her

conditions, she was less social than she used to be and became frustrated more quickly. (*Id.* at 462). Due to her conditions, she had difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, seeing, completing tasks, concentrating, and getting along with others. She could walk 10 feet before needing 10 to 15 minutes of rest. She could pay attention for 10 minutes or less. She did not follow written or spoken instructions well because she became overwhelmed and frustrated. (*Id.*).

On August 6, 2021, Bustos visited Dr. Schebler-Poulos and reported abdominal pain and vomiting in mornings. (*Id.* at 927). She could not eat because she could not taste anything and it made her pain worse. (*Id.* at 939). Dr. Schebler-Poulos observed her to be chronically ill, disheveled, and in mild distress. (*Id.* at 941). Dr. Schebler-Poulos diagnosed her with, among other conditions, intestinal metaplasia of gastric mucosa, gastritis, GERD, epigastric pain, and diabetic peripheral neuropathy. (*Id.* at 927). Bustos reported marijuana use. (*Id.* at 928). Dr. Schebler-Poulos referred her to gastroenterology for the intestinal metaplasia of gastric mucosa, which was a precancerous condition. (*Id.* at 937). She prescribed medication for Bustos's GERD, gastritis, constipation, and epigastric pain. (*Id.*). Bustos had a follow-up with Dr. Schebler-Poulos on August 20, 2021, and reported that she had not been vomiting and that the medication helped, but she was still constipated. (*Id.* at 966). Dr. Schebler-Poulos observed her to be fatigued and chronically ill, with a depressed mood and flat, tearful affect. (*Id.* at 969). Due to personal circumstances, Bustos was also experiencing a mild episode of major depressive disorder.

(*Id.* at 965-66).  Dr. Schebler-Poulos re-prescribed medicine for her epigastric pain and constipation, and prescribed additional medication for depression.  (*Id.*).

Bustos returned to Dr. Schebler-Poulos on December 10, 2021, regarding her diabetes.  (*Id.* at 1000).  She reported that the depression medication was helping a lot, although she still had episodes of depression.  (*Id.* at 1002).  She was not checking her blood sugar at home and it was high.  She got sharp pains all over her body and her feet were swelling.  Bustos reported that she stopped smoking marijuana two years earlier.  Her neuropathy was keeping her up at night and her feet felt like they were on fire and throbbing.  (*Id.*).  Dr. Schebler-Poulos observed that Bustos was healthy-appearing with a normal mood and affect.  (*Id.* at 1005).  A diabetic examination of her feet showed diminished sensation, but no swelling or other problems.  (*Id.*).  Dr. Schebler-Poulos re-prescribed medication for her GERD, diabetic peripheral neuropathy, and intestinal metaplasia of gastric mucosa, along with prescribing an additional medication for her diabetic peripheral neuropathy.  (*Id.* at 1001).

Bustos underwent an endoscopy on December 14, 2021.  (*Id.* at 1073).  The results showed mild, patchy gastritis and a biopsy was taken.  (*Id.*).  The biopsy confirmed that intestinal metaplasia was present.  (*Id.* at 1075).

On March 13, 2022, Bustos visited the emergency room due to constant chest pain with associated nausea and vomiting.  (*Id.* at 1238).  Upon admission, Bustos was experiencing a hypertension emergency with elevated blood pressure.  (*Id.*).  Bustos denied abdominal pain, extremity pain, and extremity swelling.  (*Id.* at 1243).  The doctor

suspected a type II non-STEMI due to hypertensive emergency.  (*Id.* at 1239).  Following treatment, her blood pressure improved.  (*Id.* at 1245).

On August 23, 2022, Bustos again visited the emergency room due to sharp pain in her chest that was a 10 out of 10 and radiated to her back.  (*Id.* at 43).  She also reported nausea, vomiting, and epigastric pain.  Bustos stated that she occasionally used marijuana. She was again diagnosed with a non-STEMI due to hypertensive emergency and underwent a cardiac catheterization.  (*Id.*).  Bustos also underwent a percutaneous transluminal coronary angioplasty and received a stent in her coronary artery.  (*Id.* at 44).  She was prescribed medication and discharged on August 26, 2022.  (*Id.* at 43-44).

### c.  ALJ Decision

On July 19, 2022, the ALJ issued an opinion concluding that Bustos was not under a disability since June 30, 2021.  (*Id.* at 112-26).  At the first step of the sequential evaluation process, the ALJ concluded that Bustos had not engaged in substantial gainful activity since June 30, 2021.  (*Id.* at 115).  At the second step, the ALJ concluded that Bustos had two severe impairments that limited her ability to perform basic work activities, including: (1) diabetes mellitus with diabetic neuropathy; and (2) recent onset non-STEMI and hypertensive emergency with a history of coronary artery disease.  (*Id.*).  The ALJ extensively summarized the medical records related to Bustos's abdominal problems, including her GERD, gastritis, and constipation with epigastric pain.  (*Id.* at 115-18).  The ALJ noted that Bustos was informed that her abdominal pain and nausea were likely caused by her cannabis use and was told to abstain, but testing showed that she continued to use

marijuana.  (*Id.* at 118).  The ALJ stated that Bustos's epigastric pain, vomiting, gastroesophageal reflux disease, and constipation had been improved or controlled through various medications.  (*Id.*).

The ALJ stated that no significant objective medical findings supported that Bustos's mental impairments and abdominal impairments caused more than minimal limitations on her ability to perform work activities, and therefore concluded that they were non-severe.  (*Id.* at 119).  As to Bustos's mental limitations, the ALJ concluded that Bustos had mild limitations in her abilities to interact with others and concentrate, persist, or maintain pace.  (*Id.* at 119-20).  At the third step, the ALJ concluded that Bustos did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (*Id.* at 120-21).

The ALJ concluded that Bustos had the residual functional capacity to perform light work, but could only occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and only occasionally stoop, kneel, crouch, and crawl.  (*Id.* at 121).  The ALJ extensively summarized the medical evidence in the record.  (*Id.* at 121-23).  The ALJ concluded that Bustos's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Bustos's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical and other evidence.  (*Id.* at 123-24).  The ALJ noted that the record showed some non-compliance with medicines.  (*Id.* at 124).  As to Bustos's history of hypertension and coronary artery disease, the ALJ stated that objective medical evidence

did not show any cardiac abnormalities other than prior artery bypass grafting, and Bustos's hypertension was well controlled with medication.  The ALJ stated that Bustos's diabetes mellitus with diabetic neuropathy and recent onset non-STEMI and hypertensive emergency with a history of coronary artery disease were considered in the RFC, as reflected by the limitation to less than light work.  (*Id.*).

As to the opinion evidence, the ALJ found the opinions of the state agency medical consultants to be unpersuasive to the extent they found that Bustos did not have a severe physical impairment that met the 12-month durational requirement.  (*Id.*).  The ALJ concluded that the evidence in the record showed ongoing diagnoses of diabetes mellitus with neuropathy and hypertension.  The ALJ found the consultants' opinions on the Paragraph B criteria partially persuasive because they were supported by the evidence available at the time, but that additional evidence received at the hearing supported the conclusions in the ALJ's decision.  (*Id.*).

At step four, the ALJ concluded that Bustos could perform her past relevant work as a fast-food manager.  (*Id.*).  The ALJ concluded that Bustos could perform this work as actually and generally performed.  (*Id.* at 125).  Thus, the ALJ concluded that Bustos was not under a disability since June 30, 2021.  (*Id.* at 126).

The Appeals Council denied Bustos's request for review of the ALJ's decision.  (*Id.* at 5-8).

## III.  DISCUSSION

### a.  Whether substantial evidence supported the ALJ's finding that Bustos's abdominal pain was non-severe

In her motion for summary judgment, Bustos first contends that the ALJ's conclusion that her abdominal pain was non-severe was unreasonable and led to a defective RFC determination and finding that she could perform her past work.  (D.E. 12 at 5).  Bustos argues that the record shows that she sought treatment for her abdominal pain consistently, including at the emergency room.  (*Id.* at 9).  She argues that nothing in the record supports the ALJ's assumption that her cannabis use caused her abdominal pain.  (*Id.* at 9-10).  Bustos contends that the ALJ acknowledged her epiploic appendagitis and epigastric abdominal pain, which contradicted the conclusion that there were no significant objective medical findings to support her abdominal pain.  (*Id.* at 10).  She further argues that, even if her abdominal pain was non-severe, the ALJ was nonetheless required to include appropriate limitations in the RFC determination, but instead included no limitations for abdominal pain at all.  (*Id.*).

The Commissioner responds that the medical records supported the ALJ's conclusion that Bustos's abdominal pain was non-severe.  (D.E. 15 at 9).  Specifically, the Commissioner argues that Bustos was advised that her abdominal pain and nausea were likely caused by her cannabis use and that she should abstain, but testing indicated that she continued to use cannabis.  Further, the records indicated that Bustos's epigastric pain, vomiting, GERD, and constipation were improved with medication.  (*Id.*).  Lastly, the

Commissioner argues that, even if these impairments were severe, Bustos has not shown how they would change the RFC determination. (*Id.* at 10).

Bustos replies that the record as a whole establishes that her abdominal pain was severe. (D.E. 16 at 1-3). She argues that, while her cannabis use was suggested as a possible cause of her abdominal pain at one point, subsequent evaluations did not even mention it as a potential cause and instead diagnosed her with GERD with epigastric pain. (*Id.* at 2-3). Bustos contends that the record does not show that her impairments are controlled by medication, but rather that they were, at best, slightly improved by medication. (*Id.* at 3).

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The burden has been described as more than a scintilla, but lower than a preponderance. *Id.* On review, the Court may not reweigh the evidence, and it is the ALJ's responsibility to resolve conflicts in the evidence, not the Court's. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

The term "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In evaluating a disability claim, the Commissioner follows a five-step sequential process to determine whether: (1) the claimant is participating in substantial gainful activity; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in the appendix to the regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform other relevant work.  *Martinez*, 64 F.3d at 173-174; 20 C.F.R. §§ 404.1520(a)(4).  The claimant bears the burden of proof on the first four steps, with the burden shifting to the Commissioner at the fifth step.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

The second step of the sequential analysis requires that the factfinder decide whether the claimant's impairment is "severe," irrespective of age, education, and work experience. *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992).  An impairment can only be considered as not severe if it is so slight that it would not be expected to interfere with the individual's ability to work.  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  This standard requires the claimant to make only a *de minimis* showing.  *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

RFC, which is determined between the third and fourth steps, is the most a claimant can do despite their limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Perez*, 415 F.3d at 461-62.  When assessing a claimant's RFC, the ALJ must consider all relevant medical and other evidence, including statements by the claimant and their family members regarding

the limitations that result from their symptoms.   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  When creating the RFC, the ALJ must consider all a claimant's medically determinable impairments, even those that are non-severe.   *Id.* §§ 404.1545(a)(2), 416.945(a)(2).  Additionally, "[p]ain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone."  *Id.* §§ 404.1545(e), 416.945(e).  "[T]he determination of residual functional capacity is the sole responsibility of the ALJ."  *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).

"The ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). Impairments that can be controlled by medication are not disabling.  *See James v. Bowen*, 793 F.2d 702, 706 (5th Cir. 1986).

Here, the ALJ applied the correct legal standard when she determined that Bustos's abdominal pain was not severe.  In the law section of the ALJ's decision, she stated that an impairment is not severe only when the evidence shows "a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work," citing the regulations and SSRs 85-28 and 16-3p.  (D.E. D.E. 5-1 at 113-14).  The Fifth Circuit has held that this language is consistent with the standard in *Stone* and is a correct statement of the legal standard.  *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).  The ALJ repeated the same standard when she concluded that Bustos's abdominal pain was not severe, stating that the impairment would not be expected to "cause

more than minimal limitations on her ability to perform work activities." (D.E. 5-1 at 119). Accordingly, the ALJ applied the correct legal standard.

However, under this *de minimis* standard, substantial evidence did not support the ALJ's conclusion that Bustos's abdominal pain was not severe. The medical records show that between September 9, 2019, and August 23, 2022, Bustos visited the emergency room or her doctors for abdominal pain, nausea, and/or vomiting at least 17 times. Throughout these visits, and consistent with her hearing testimony, Bustos often reported vomiting 1-3 times daily. (D.E. 5-1 at 151, 506, 531, 709). She also suffered from constipation or diarrhea at times. (*Id.* at 579, 832, 836, 910, 937, 966, 1176). Bustos reported and was treated for significant abdominal problems over an extended period of time.

The ALJ reached the conclusion that Bustos's abdominal pain was non-severe for three primary reasons: (1) the infection after her hernia surgery occurred before the amended onset date; (2) Bustos was advised that her cannabis use could cause her nausea and continued using it anyway; and (3) her various abdominal conditions were improved or controlled by medication. (D.E. 5-1 at 118). First, as to the infection, it is true that some of Bustos's reported abdominal pain and vomiting appear to have been related to this infection. (*Id.* at 584, 638). However, Bustos also consistently reported these problems both before and after the surgery and infection, and she was diagnosed with gastritis, epiploic appendagitis, and GERD independent of her hernia surgery and the subsequent infection. (*See, e.g., id.* at 837, 1117, 1179). Even removing doctor's visits and testing centered around her surgery and infection, Bustos still had a significant medical history

related to her abdominal pain and vomiting.   Second, the ALJ was correct that an emergency room doctor advised Bustos that her cannabis use could cause her nausea and recommended abstaining from further use.   (*Id.* at 1131).   Bustos did not follow this advice. (*Id.* at 43, 928).   However, no other doctor ever diagnosed Bustos with cannabinoid hyperemesis syndrome despite her usually reporting her use of marijuana, and no other doctor treated her for this condition after her visit to the emergency room.   The ALJ cannot pick and choose only the evidence that supports her decision.   *Loza*, 219 F.3d at 393. Finally, although Bustos often reported that medication helped her symptoms, it cannot be said that her abdominal issues were controlled by medication when she continued to suffer from nausea and vomiting despite being on medication since at least May 2020.   (*Id.* at 506).

The severity determination requires Bustos to make only a *de minimis* showing. *Salmond*, 892 F.3d at 817.   The record shows that Bustos experienced regular nausea and vomiting over a period of several years, attributed to various causes including a hernia and post-surgery infection, cannabinoid hyperemesis syndrome, GERD, and gastritis.   The record further indicates that, although Bustos's symptoms were improved by medication, they were not controlled.   An impairment can only be considered as not severe if it is so slight that it would not be expected to interfere with the individual's ability to work.   *Stone*, 752 F.2d at 1101.   Even under the deferential substantial evidence standard, the record here does not support the ALJ's conclusion that Bustos's abdominal pain was so slight that it would not be expected to interfere with her ability to work and was therefore non-severe.

20

This warrants a remand for further consideration of Bustos's limitations and whether the RFC determination requires modification.

b. *Whether the ALJ properly considered Bustos's subjective complaints and incorporated them in the RFC*

Bustos next contends that she reported issues lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, seeing, completing tasks, concentrating, and getting along with others, and that the ALJ improperly failed to incorporate her subjective complaints into the RFC. (D.E. 12 at 13). She argues that her self-described limitations far exceed the ALJ's conclusion that she can complete light work, and at best, she can complete sedentary work. (*Id.* at 13-14). Bustos contends that the ALJ did not properly analyze and discuss the credibility determination and that the underlying evidence supports finding her subjective complaints credible. (*Id.* at 14-18).

The Commissioner responds that the ALJ properly fulfilled her obligation to make an affirmative finding regarding Bustos's credibility and appropriately considered and discussed all the evidence in the record. (D.E. 15 at 15-16). The Commissioner argues that the ALJ concluded that Bustos could complete her past relevant work, and Bustos did not present sufficient evidence to rebut this determination. (*Id.* at 16-19).

Bustos replies that the ALJ did not reasonably find that she could perform the standing/walking requirements of light work on a regular and ongoing basis, and the failure to include all limitations in the RFC determination and hypotheticals render the vocational expert's testimony inapplicable. (D.E. 16 at 5).

21

In determining whether a claimant is disabled, the ALJ must consider all their symptoms, including pain, and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). "However, statements about … pain or other symptoms will not alone establish [a disability]." *Id.* There must be objective medical evidence showing an impairment that could reasonably cause the pain or other symptoms alleged. *Id.* Where a claimant has a medically determinable impairment that could reasonably be expected to produce their symptoms, the ALJ must then evaluate the intensity and persistence of their symptoms. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ must consider all evidence regarding how the claimant's symptoms affect them. *Id.* This includes evidence beyond just the objective medical evidence because such other evidence may show the actual effects of the impairment in ways that objective medical evidence cannot. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). This includes evidence of the claimant's daily activities, precipitating and aggravating factors, information about the type and effectiveness of medication, treatment received other than medication, and the frequency and intensity of the symptoms, among other things. *Id.*

Here, substantial evidence supported the limitations included by the ALJ in the RFC determination with regard to Bustos's self-reported mobility and exertional limitations. Bustos's self-described limitations far exceed the limitations found by the ALJ, but they also far exceed any medical evidence in the record. Bustos did not report difficulty walking or standing at her appointments, and her medical providers observed a normal gait at all

times.  (D.E. 5-1 at 578, 916, 1178).  Although, for example, Bustos reported in a function report that she could only walk 10 feet before needing 10-15 minutes of rest, the medical records do not support this claim.  (*Id.* at 462).  Moreover, the medical records do not reflect that Bustos reported mobility issues to her medical providers.  The few medical records that Bustos cites in her briefing on this issue relate to her abdominal issues.  (D.E. 12 at 15).  As discussed above, the record shows that Bustos's abdominal issues are severe and may warrant additional non-exertional limitations in the RFC determination, but the present record does not support issues with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs.  The ALJ is required to consider all evidence in the record when analyzing the intensity and persistence of a claimant's symptoms, including the claimant's own statements and the objective medical evidence.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  Substantial evidence supported the ALJ's failure to include most of Bustos's self-reported limitations in the RFC because no objective medical evidence in the record supported them and no medical providers opined on them.

> c. *Whether substantial evidence supported the ALJ's RFC finding where it failed to include any mental limitations*

Finally, Bustos argues that the ALJ identified mild limitations in her abilities to interact with others and concentrate, persist, or maintain pace, but failed to include any limitations in the RFC determination.  (D.E. 12 at 19-20).  She argues that this is particularly problematic because her past relevant work as a fast-food manager is skilled work that requires interacting with others.  (*Id.* at 20).  Finally, Bustos contends that the ALJ selectively cited to the record when discussing her mental limitations and ignored the

problems that Bustos reported with interacting with others and her concentration.  (*Id.* at 20-21).

The Commissioner responds that the ALJ considered the opinion evidence, medical records, and Bustos's subjective complaints regarding her mental limitations in reaching the conclusion that she was mildly limited in her abilities to interact with others and concentrate, persist, or maintain pace.  (D.E. 15 at 10-13).  The Commissioner argues that the ALJ's preliminary finding of mild limitations in two of the Paragraph B criteria is not an RFC determination and does not require any particular limitations in the RFC determination.  (*Id.* at 14-15).

Bustos replies that the ALJ's omission of any mental limitations in the RFC determination was harmful here specifically because the ALJ concluded that she could return to past skilled work.  (D.E. 16 at 4).  She argues that the ALJ provided no explanation for why she found some mild mental limitations, but then included no mental limitations in the RFC determination.  (*Id.* at 4-5).

The ALJ does not defer or give any specific evidentiary weight to any medical opinion or prior administrative medical finding.  20 C.F.R. §§ 404.1520c(a); 416.920c(a). The ALJ considers several factors when evaluating medical opinions, including: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors as applicable.  *Id.* §§ 404.1520c(c); 416.920c(c).  The most important factors when evaluating persuasiveness are supportability and consistency.  *Id.* §§ 404.1520c(a); 416.920c(a).  "Supportability" means that "[t]he more relevant the

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1); 416.920c(c)(1).  "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2); 416.920c(c)(2).  The ALJ must articulate how persuasive they find all of the medical opinions and prior administrative medical findings in the record. *Id.* §§ 404.1520c(b); 416.920c(b).  The ALJ must address supportability and consistency, but the other factors are optional. *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).

In evaluating mental impairments, the ALJ must determine a claimant's degree of functional limitation in four broad functional areas, including their ability to: (1) understand, remember, and apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage themselves.  20 C.F.R. §§ 404.1520a(c), 416.920a(c).  These are the Paragraph B criteria.  20 C.F.R., Part 404, Subpt. P, App'x 1, 12.00E, F(2)(B).  The ALJ must rate the claimant's degree of functional limitation on a five-point scale including none, mild, moderate, marked, or extreme. *Id.*  If the claimant's degree of limitation is "none" or "mild," it will typically be non-severe. *Id.* §§ 404.1520a(d), 416.920a(d).  If a mental impairment is severe and does not meet a listed

mental disorder, then the ALJ assesses the claimant's mental RFC.  *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

Here, the ALJ applied the proper legal standard when assessing Bustos's RFC and appropriately considered and discussed her mental impairments in the RFC assessment despite finding earlier in the sequential evaluation that it was a non-severe impairment. The standards applicable to the earlier steps in the sequential evaluation and during the RFC assessment are not the same.  *See, e.g.,* 20 C.F.R. § 404.1545(a); *Stone*, 752 F.2d at 1101.  Thus, although the ALJ was required to consider both severe and non-severe impairments when crafting the RFC, she was not required to include any specific accommodations in the RFC determination based on her earlier conclusions that Bustos had mild limitations in her ability to interact with others and concentrate, persist, or maintain pace.   20 C.F.R. § 404.1545(a)(2).   During his RFC assessment, the ALJ discussed the evidence in the record regarding Bustos's mental impairments, including Dr. Hanna's and Dr. Fiore's conclusions on the Paragraph B criteria.  (D.E. 5-1 at 124). Notably, there was little other medical evidence in the record regarding Bustos's depression and anxiety.   The ALJ previously discussed Bustos's own statements regarding her limitations when evaluating the Paragraph B criteria.  (*Id.* at 119-20).  Thus, the ALJ met the requirement that she consider all severe and non-severe impairments in the RFC assessment.   She was not required to include any specific limitations in the RFC determination resulting from impairments found at earlier steps in the sequential evaluation, and substantial evidence supported her ultimate mental RFC determination.

## IV.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Bustos's motion (D.E. 12) be **GRANTED IN PART**, the Commissioner's motion (D.E. 15) be **DENIED IN PART**, and the Commissioner's denial of supplemental security income be **REVERSED AND REMANDED** for further consideration.

Respectfully submitted on December 5, 2023.

Julie K. Hampton
United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C § 636(b)(1).